Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
Kristina Doan Strottman (SBN 268188)
E-mail: kstrottman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600 Fax: 213.236.2700

Attorneys for Defendants
LEADERS IN COMMUNITY ALTERNATIVES, INC., SUPERCOM, INC., CONNELLY, HARRINGTON, BOROWICK, RIVAS, and ARGUELLO-RAMOS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

WILLIAM EDWARDS, ROBERT JACKSON, JAMES BROOKS, and KYSER WILSON on behalf of themselves and others similarly situated,

Plaintiff,

v.

LEADERS IN COMMUNITY ALTERNATIVES, INC., SUPERCOM, INC., LINDA CONNELLY, DIANE HARRINGTON, KENT BOROWICK, RAELENE RIVAS, JEANETTE ARGUELLO-RAMOS, BELINDA DOE, DOES 1-10, inclusive,

ALAMEDA COUNTY, WYNNE CARVILL, and WENDY STILL,

Defendants.

Case No. 3:18-cv-04609-WHA

**DEFENDANTS LEADERS IN COMMUNITY ALTERNATIVES, INC., SUPERCOM, INC., CONNELLY, HARRINGTON, BOROWICK, RIVAS, AND ARGUELLO-RAMOS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

Date: November 29, 2018
Time: 8:00 a.m.

Judge: Hon. William Alsup

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... II

II. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST DEFENDANTS FOR A RICO VIOLATION (COUNT I) .......... 2

A. Litigation Privilege Bars Plaintiffs' Claims Based on Communications Related to Court Proceedings .......... 2

B. Plaintiffs Fail to State Predicate Acts to State a RICO Claim .......... 3

1. Plaintiffs' RICO Claims Based on Extortion Under the Hobbs Act and the California Penal Code for Extortion Fail .......... 4

2. Plaintiffs' RICO Claim Based on Wire Fraud Fails .......... 5

3. Plaintiffs' RICO Claim Based on the Travel Act Fails .......... 6

C. Plaintiffs Have Failed to Allege Sufficient Facts Against Individual Defendants and SuperCom .......... 7

1. Plaintiffs Fail to State a Sufficient Facts Against Defendants Connelly, Harrington, or Borowick .......... 7

2. Plaintiffs Fail to State a Sufficient Facts Against SuperCom .......... 9

III. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATIONS OF DUE PROCESS (COUNT II) OR EQUAL PROTECTION (COUNT III) .......... 10

A. LCA Was Not Acting Under the Color of Law .......... 10

B. Plaintiffs Fail to Allege Sufficient Allegations Against Individual Defendants to State a 1983 Claim .......... 11

C. Plaintiffs Fail to State a Claim against LCA Defendants for Violation of Due Process .......... 12

D. Plaintiffs Fail to State a Claim against LCA Defendants for Equal Protection .......... 13

IV. PLAINTIFF FAILS TO STATE A CLAIM FOR ABUSE OF PROCESS (COUNT IV) .......... 13

V. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003) .......... 10

*County of Oakland v. City of Detroit*,
784 F. Supp. 1275 (E.D. Mich. 1992) .......... 8

*Forrester v. White*,
484 U.S. 219 (1988) .......... 10

*Genty v. Resolution Trust Corp.*,
937 F.2d 899 (3d Cir. 1991) .......... 8

*Hill v. Opus Corp.*,
841 F. Supp. 2d 1070 (C.D. Cal. 2011) .......... 2

*Leer v. Murphy*,
844 F.2d 628 (9th Cir. 1988) .......... 11

*Lorenz v. CSX Corp.*,
1 F.3d 1406 (3d Cir. 1993) .......... 10

*McGee v. Warrensville Heights*,
16 F. Supp. 2d 837 (N.D. Ohio 1998) .......... 8

*Monell v. Dep't of Social Services*,
436 U.S. 658 (1978) .......... 12

*Moore v. Kayport Package Exp. Inc.*,
885 F.2d 531 (9th Cir. 1989.) .......... 5

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,
298 F.3d 768 (9th Cir. 1002) .......... 8

*Price v. Hawaii*,
939 F.2d 702 (9th Cir. 1991) .......... 11

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) .......... 7

*Richardson v. McKnight*,
521 U.S. 399 (1997) .......... 10

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) .......... 5

*St. Clare v. Gilead Scis., Inc.*,
536 F.3d 1049 (9th Cir. 2008) .......... 7

*Sun Savings & Loan Association v. Dierdorff*,
825 F.2d 187 (9th Cir. 1987) .......... 5

*Swift v. California*,
384 F.3d 1184 (9th Cir. 2004) .......... 11

*Thornton v. Brown*,
757 F.3d 834 (9th Cir. 2013) .......... 11

*Walsh v. Nev. Dep't of Human Res.*,
471 F.3d 1033 (9th Cir. 2006) .......... 12

*Walter v. Drayson*,
538 F.3d 1244 (9th Cir. 2008) .......... 7

**State Cases**

*People v. Bollaert*,
248 Cal.App. 4th 699 (2016), (Oct. 12, 2016) .......... 4

*Brown v. Kennard*,
94 Cal.App.4th 40 .......... 14

*Rubin v. Green*,
4 Cal. 4th 1187 (1993) .......... 3

*Silberg v. Anderson*,
50 Cal.3d 205 (1990) .......... 3

**Federal Statutes**

18 U.S.C. § 1343 .......... 4, 5

18 U.S.C. § 1951 .......... 3, 4

18 U.S.C. § 1951(b) .......... 4

18 U.S.C. § 1952 .......... 4

18 U.S.C. § 1952(a) .......... 6

18 U.S.C. § 1952(b)(2) .......... 6

42 U.S.C. § 1983 .......... 10, 11, 12

Federal Civil Rights Act .......... 11

Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*. .......... *passim*

Hobbs Act .......... 3, 4

Travel Act .......... 4

**State Statutes**

California Penal Code
§ 518 .......... 4
§§ 518-519 .......... 4
§ 1208 .......... 2, 13

Travel Act .......... 6

# I. INTRODUCTION

Plaintiffs William Edwards, Robert Jackson, James Brooks, and Kyser Wilson's (hereafter collectively "Plaintiffs") claims against Leaders in Community Alternatives ("LCA"), SuperCom, and several individual defendants (collectively referred herein as "LCA Defendants") fail as a matter of law.

As addressed more fully in the County of Alameda and Chief Still's Reply to Plaintiffs' Opposition to the Motion to Dismiss, which LCA Defendants join,[1] Plaintiffs' claims are barred based on the *Younger* abstention doctrine and the Article III standing requirements. Plaintiffs' Opposition attempts to have it both ways—on the one hand arguing there are no pending state law criminal proceedings and then arguing the alleged harm in this case is capable of repetition. However, Plaintiffs' contradictory arguments only highlight the ongoing criminal proceedings, which is where Plaintiffs and their criminal defense attorneys should raise their fee disputes. Plaintiffs' Opposition also fails to show Plaintiffs have Article III standing to bring their request for injunctive relief. Plaintiffs' request for injunctive relief is moot as Plaintiffs are not currently on LCA monitors nor are they paying fees, and Plaintiffs fail to allege plausible allegations to show they are likely to suffer the same harm—namely being sentenced again to wear an LCA monitor <u>and</u> encountering fee disputes where they have no judicial recourse.

Further, Plaintiffs fail to state a claim against the LCA Defendants. While Plaintiffs' Opposition repeats conclusory allegations from their Complaint, Plaintiffs fail to meet the heightened pleading standards required to state cognizable RICO claims. Similarly, Plaintiffs fail to meet the pleading standards requiring them to individually link each defendant to a constitutional violation in order to state a viable claim for violations of Equal Protection and/or Due Process. Finally,

---

[1] Both the LCA and the County Defendants raised jurisdictional arguments regarding *Younger* and Article III standing in their Motion to Dismiss. Because Plaintiffs addressed these arguments in their Opposition to the County, the County's reply contains the response to Plaintiffs on this issue.

Plaintiffs fail to state a claim for abuse of process. Therefore, Plaintiffs' Complaint should be dismissed.

## II. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST DEFENDANTS FOR A RICO VIOLATION (COUNT I)

Plaintiffs do not dispute their RICO claims are grounded in allegations of fraud, and therefore "must be alleged with particularity under Rule 9(b)." *Hill v. Opus Corp*., 841 F. Supp. 2d 1070, 1088 (C.D. Cal. 2011) (*citing Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist*., 940 F.2d 397, 405 (9th Cir. 1991)). "Rule 9(b) requires that plaintiffs allege the time, place, and manner of each predicate act, the nature of the scheme involved, and the role of each defendant in the scheme" *Id*. However, Plaintiffs' Complaint fails to specifically allege facts to establish the underlying predicate acts necessary to state a RICO violation, especially as to each individual defendant and SuperCom. Also, the litigation privilege limits Plaintiffs' claims because any LCA communications to the criminal court are privileged.

### A. Litigation Privilege Bars Plaintiffs' Claims Based on Communications Related to Court Proceedings[2]

Plaintiffs acknowledge the litigation privilege exists; however, they argue Defendants do not explain the invocation of this privilege and contend the litigation privilege is irrelevant in this case. Both of these arguments are incorrect.

In the Motion to Dismiss, Defendants assert that Plaintiffs cannot establish the underlying threats necessary to state predicate acts for a RICO claim because the purported threats Plaintiffs raised in their complaint are communications made in the course of - or in preparation for - court proceedings, and are therefore privileged. Specifically, Defendants' Motion argues that pursuant to the Penal Code Section 1208, LCA must inform the Court if an individual is unable to pay

[2] Defendants withdraw their argument regarding quasi-judicial immunity at this stage of the pleadings based on Plaintiffs' allegations, which the Court must assume are true for the purposes of this motion.

monitoring fees or there is a dispute as to fees. (LCA MTD at 18.) While Plaintiffs argue that it is disingenuous for Defendants to equate filing a violation report to fulfilling their duty under the Penal Code, there are no factual allegations to support the Plaintiffs' assumption that any violation report which LCA submitted to the Court was for any purpose other than complying with the Penal Code to report when an individual is not complying with the terms of their home detention. Plaintiffs' conclusory allegation that LCA violates individuals for profit is purely speculative.

Plaintiffs go on to argue they are not challenging the violation reports themselves. However, such violation reports are the heart of Plaintiffs' allegations that there were threats made against them, which Plaintiffs must establish in order to state a predicate claim for extortion for their RICO claim. Any report regarding a fee dispute, and any communication relating to a violation report, such as informing Plaintiffs that a report was being written, is covered by the litigation privilege, because the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal.3d 205, 266 Cal.Rptr. 638, 642, 786 P.2d 365, 369 (1990); *Rubin v. Green*, 4 Cal. 4th 1187, 1193-94 (1993) (stating that the courts have given this privilege an "expansive reach.").

Therefore, the litigation privilege is directly relevant to this case and undermines Plaintiffs' allegations that Defendants made unlawful threats, which Plaintiffs must establish in order to establish their RICO claims. They may not use statements which are entitled to the litigation privilege to form the predicate facts.

**B. Plaintiffs Fail to State Predicate Acts to State a RICO Claim**

Plaintiffs allege LCA defendants "conducted or participated in and conspired to conduct the affairs of the RICO Enterprise" by engaging in the following predicate acts of racketeering activity: (1) Extortion in violation of the Hobbs Act

(18 U.S.C. § 1951), (2) Extortion in violation of Cal. Pen. Code §§ 518-519; (3) Extortion in violation of the Travel Act, 18 U.S.C. § 1952; and (4) Wire Fraud, 18 U.S.C § 1343. While Plaintiffs' Complaint is lengthy, it fails establish the requisite elements to state a claim based on any of these predicate acts.

**1. Plaintiffs' RICO Claims Based on Extortion Under the Hobbs Act and the California Penal Code for Extortion Fail**

In order to state a claim for extortion under state or federal law, a plaintiff must show that a defendant obtained property without his consent, by "use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b); Cal. Pen. Code § 518.

Here, Plaintiffs do not claim any of them were actually incarcerated or that any LCA case managers said they would send them to jail. Instead, Plaintiffs' Complaint contains allegations that LCA case managers extorted money from them by "threatening" to report them to the Court if they did not provide necessary documentation to show their financial status or pay their fees. However, Plaintiffs do not have any legal authority to show that these kinds of statements are akin to extortionist threats that are meant to be deterred by the Hobbs Act or Penal code. The only case Plaintiffs cite to regarding inherent and implied threats is *People v. Bollaert*, 248 Cal.App. 4th 699 (2016), *review denied* (Oct. 12, 2016), where an individual was convicted of extortion after he threatened to post private and intimate photographs of people if they did not pay him. This case is inapposite, as committing a criminal act is different from complying with a Penal code duty.

As noted above, LCA's communications are necessary for court proceedings, required by the Penal Code, and therefore protected by the litigation privilege. It would be impossible for LCA case managers to do their job or have the court adjudicate fee disputes if case managers could not report this type of information. Simply because a violation of pretrial supervision or criminal probation can lead to jail time if the court finds it appropriate does not mean that a communication

reporting a violation is a wrongful threat amounting to extortion under state or federal law. Plaintiffs therefore fail to allege facts to state an underlying claim of extortion.

**2. Plaintiffs' RICO Claim Based on Wire Fraud Fails**

To allege a violation of wire fraud statutes under 18 U.S.C. § 1343, Plaintiffs must show (1) a scheme to defraud, (2) use of interstate wires in furtherance of the fraud, and (3) specific intent to defraud. *Sun Savings & Loan Association v. Dierdorff*, 825 F.2d 187, 195 (9th Cir. 1987). To withstand a motion to dismiss with respect to a claim for wire fraud, plaintiffs must allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986); *Moore v. Kayport Package Exp. Inc.*, 885 F.2d 531, 541 (9th Cir. 1989.)

Plaintiffs allege in their Complaint that LCA intentionally uses wires to deceive participants. However, a closer examination of Plaintiffs' allegations reveals there were no fraudulent statements made using the transmission of wires.

In their Opposition, Plaintiffs give one example whereby Defendant Rivas allegedly called Plaintiff Edwards on January 16, 2017, to request that he pay off his outstanding balance of $182.50. However, this is insufficient to state a claim for wire fraud in several ways. First, Plaintiffs fail to allege facts showing that Defendant Rivas' statement was a false representation and/or was meant to defraud. While Plaintiffs speculate Defendant Rivas' intent in calling Plaintiff Edwards was to get him to pay money to which LCA was not entitled, and deceive him into thinking he would go to jail if he did not so, there are no factual allegations to support this conclusion. According to Plaintiffs' own allegations and exhibits, LCA believed its fees were proper because they did not have proper documentation from Plaintiff Edwards to indicate otherwise. In the report attached to the Complaint, LCA indicated that Plaintiff Edwards failed to provide verification of

household income necessary for proper assessment of program fees, and Plaintiff Edwards responded that he would provide such information but had not done so. (*See* Pl's Compl. Exhibit 22 [Doc. 1-5 at 7.]) It is implausible to believe that Defendant Rivas would be illegally extorting Plaintiff and document this in her report to the Court. Instead, the reasonable inference is she was reporting an honest fee issue she believed the Court needed to be apprised of under the Penal Code.

Moreover, there are no allegations that Defendant Rivas threatened Plaintiff Edwards with jail time over the phone -- or at any other time. Based on Plaintiffs' allegations, she instead simply called Plaintiff Edwards to follow-up regarding outstanding fees.

Further, Plaintiffs fail to show a call such as this was part of a scheme to use wires to deceive individuals. While Plaintiffs allege in their Opposition that there was pattern of using emails and calls to deceive Plaintiffs, Plaintiffs do not have any specific examples of the alleged deceptive statements made by phone or email in their Complaint or Opposition. Indeed, Plaintiffs' Complaint neither references nor attaches any emails with any fraudulent statements.

Plaintiffs have therefore failed to allege sufficient facts to state an underlying claim for wire fraud in order to establish a predicate act for RICO.

**3. Plaintiffs' RICO Claim Based on the Travel Act Fails**

The Travel Act makes it a crime to travel between states with the intent to commit specified crimes listed in the statute—including extortion or bribery—or to use the mail to commit those crimes. *See* 18 U.S.C. § 1952(a), (b)(2).

In their Opposition, Plaintiffs assert their claim predicated on the Travel Act is based on three facts: (1) SuperCom purchased LCA based in part based on LCA's profits; (2) Defendant Harrington is listed as an officer of SuperCom; and (3) SuperCom provides equipment and office space for LCA. (Pl.'s Opp. at 13.) However, these disjointed allegations are insufficient to demonstrate that there was travel between states with the intent to commit specified crimes. For example,

Plaintiffs provide no factual allegations or explanation as to how SuperCom was involved or even aware of any alleged extortion, what crimes were committed between state lines, who was involved, or when such crimes were committed. This is in violation of the pleadings standard articulated by Rule 9(d) in order to state a claim. Simply saying SuperCom provided LCA with office space, or that SuperCom and LCA have one overlapping officer, is a far stretch from showing SuperCom's alleged involvement in an extortionist scheme.

While Plaintiffs argue that all reasonable inferences must be drawn in its favor, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### C. Plaintiffs Have Failed to Allege Sufficient Facts Against Individual Defendants and SuperCom

#### 1. Plaintiffs Fail to State a Sufficient Facts Against Defendants Connelly, Harrington, or Borowick

As Defendants stated in their Motion to Dismiss, liability for participating in the "conduct" of a RICO enterprise extends only to those who "have some part in directing [the enterprise's] affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). In the RICO context, "directing" has a different meaning than is commonly understood. A defendant need not be in charge of or have "significant control over or within [the] enterprise." *Reves*, 507 U.S. at 179, n.4 (citation omitted). However, more is required than "simply being involved," and "[s]imply performing services for the enterprise does not rise to the level of direction." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). Similarly, it "is not enough that [a defendant] failed to stop illegal activity." *Id*. at 1248.

In their Opposition, Plaintiffs do not dispute that they do not have any specific allegations to show the individual involvement of Defendants Connelly, Harrington, or Borowick. Plaintiffs instead argue that Defendants can be held

liable under the doctrine of *respondeat superior*. While *respondeat superior* may apply to RICO violations, as Plaintiffs note, this may only occur when three conditions are met: (1) the employer and enterprise are distinct; (2) the employee's RICO violation profited the employer; and (3) the employee's acts were within the scope of his or her employment. *See Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 1002). These conditions are not met here.

First, the employer LCA is not distinct from the alleged enterprise. While Plaintiffs characterize the enterprise as between LCA and the County, the County has not been sued as part of the RICO enterprise and courts have found that municipal agencies cannot formulate the requisite criminal intent to engage in a pattern of racketeering activity. *See e.g,. Genty v. Resolution Trust Corp*., 937 F.2d 899, 914 (3d Cir. 1991); *see also McGee v. Warrensville Heights*, 16 F. Supp. 2d 837, 848 (N.D. Ohio 1998) (municipality is incapable of forming specific intent); *County of Oakland v. City of Detroit*, 784 F. Supp. 1275, 1283 (E.D. Mich. 1992) (city cannot formulate the requisite criminal intent to engage in a pattern of racketeering activity and therefore is immune from civil RICO liability). Therefore. the alleged enterprise is LCA and its officers are not a distinct legal entity.

Second, it is complete conjecture to assume SuperCom purchased LCA as a result of the alleged threats made by a few case managers and the profits derived therefrom, as Plaintiffs argue in their Opposition. Plaintiffs have no facts to support this conclusory allegation, and they therefore do not have facts showing that LCA benefitted from the purported RICO enterprise. Instead, only the opposite inference can be made. Defendants Connelly, Borwick, and Harrington stood to lose by allowing purported unlawful extortion and disregarding its contract with the County whereby LCA agreed to apply a sliding scale for users. Any unlawful extortion would endanger LCA's contract with the County, any potential buyout, and the business itself. While a business may be purchased because of its profits, Plaintiffs must show the profits derived from extortion rather than good business.

Finally, Plaintiffs cannot demonstrate that allegedly threatening individuals or extorting profits, which Plaintiffs allege was the RICO scheme, were within the scope of the LCA case managers' duties. The only support Plaintiffs have for this claim is that the LCA Handbooks instruct participants to contact their case manager if they have any questions. (Pl.'s Opp. at 16.) This cannot be construed as a policy or instruction that a case manager's duties are to threaten individuals.

Instead, the handbooks which Plaintiffs attach to their complaint demonstrate the alleged RICO scheme would be completely outside the scope of a LCA employee's scope of employment. The 2016 Handbook states that "LCA will work with a client if there is a change in their financial status," (Exhibit 4 [2016 Handbook], Doc. 1-1, p. 43.) In 2017, the manual was expanded to state: "LCA will work with a participant regarding their fees if there is a change in their financial status while on the program. Participants have the right to a court hearing if they are unable to come to an agreement with LCA regarding the terms of the payment, if they dispute LCA's assessment of their fees, or if they are, or become unable to pay. The Court will then determine the participants' ability to pay, and set the amount and terms of payment." (Exhibit 16 [2017 Handbook], Doc. 1-4 at 6, emphasis added.) Therefore, Plaintiffs have no facts supporting their argument that the alleged RICO scheme was within the scope of their employees' duties.

Defendants Connelly, Harrington, and Borowick therefore should be dismissed because Plaintiffs fail to allege facts showing that they should be held vicariously liable.

**2. Plaintiffs Fail to State a Sufficient Facts Against SuperCom**

Plaintiffs' Opposition wholly fails to address Defendants' argument that Plaintiffs do not allege sufficient facts to show SuperCom engaged in a pattern of illegal activity, which is necessary to state a RICO claim. While Plaintiffs reference SuperCom's purchase of LCA in their Opposition, there are no allegations or arguments that SuperCom was involved in or aware of LCA's day-to-

day operations, or that it participated in any way in the alleged racketeering. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1412 (3d Cir. 1993) (holding that in order to state a claim against a parent corporation, "plaintiff must plead facts which, if assumed to be true, would clearly show that the parent corporation played a role in the racketeering activity which is distinct from the activities of its subsidiary.") SuperCom should therefore be dismissed.

## III. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATIONS OF DUE PROCESS (COUNT II) OR EQUAL PROTECTION (COUNT III)

Defendants' Motion to Dismiss asserts that Plaintiffs' Due Process and Equal Protection Claims fail because: (1) LCA was not acting under the color of law; (2) Plaintiffs fail to allege sufficient allegations linking each individual defendant to an alleged constitutional deprivation; (3) Plaintiffs fail to state a claim for Equal Protection; and (4) Plaintiffs fail to state a claim for Due Process. Plaintiffs' Opposition only addresses Defendants' first argument. While Plaintiffs incorporate by reference their arguments in opposition to the County's Motion to Dismiss, the arguments regarding the County and LCA are distinct. Plaintiffs therefore fail to respond to LCA's arguments as explained below.

### A. LCA Was Not Acting Under the Color of Law

To establish liability under § 1983, a plaintiff must show 1) that he has been deprived of a right secured by the United States Constitution or a federal law and 2) that the deprivation was effected "under color of state law." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

In their Opposition, Plaintiffs argue that Defendants "fail to cite to the cases most directly on point: Supreme Court holdings that private probation officers perform public functions and are state actors." (Pl.'s LCA Opp. at 22.) However, none of the cases cited by Plaintiff in support of this argument involve alleged "private probation officers." *See Richardson v. McKnight*, 521 U.S. 399 (1997) (case dealing with employees of a private prison); *Forrester v. White*, 484 U.S. 219

(1988) (employment case relating to a court employee who had previously been a probation officer); *Thornton v. Brown*, 757 F.3d 834,7 840 (9th Cir. 2013) (habeas petition challenging GPS monitoring; no reference to private employees); *Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004) (case involving parole officers employed by the California Department of Corrections and Rehabilitation).

While Plaintiffs argue that LCA performs public functions that are traditionally the exclusive responsibility of the state, Plaintiffs' complaint fails to allege facts that demonstrate LCA employees have the responsibilities of traditional probation officers. For example, LCA does not actually determine if an individual is violating probation nor can it send an individual back to jail or even recommend a sentence. Per Plaintiffs' own allegations, LCA merely reports potential violations to the courts. (Compl. at ¶ 311.)

Plaintiffs therefore fail to overcome the presumption that generally private parties are not acting under color of state law, and Plaintiffs' section 1983 claims should be dismissed. *See Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991).

**B. Plaintiffs Fail to Allege Sufficient Allegations Against Individual Defendants to State a 1983 Claim**

The Federal Civil Rights Act provides liability only against those who, through their personal involvement or failure to perform legally required duties, caused another's constitutionally protected rights to be violated. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Plaintiffs' Opposition completely ignores this well-established principal, which is fatal to Plaintiffs' section 1983 claims, especially with respect to Defendants Connelly, Harrington, Borowick, and SuperCom. If anything, Plaintiffs' Opposition only reinforces why these defendants should be dismissed. Plaintiffs' Opposition indicates that Defendants Connelly, Harrington, and Borowick are only being sued for RICO violations on the basis of *respondeat superior* liability. (Pl.'s LCA Opp. at 14.) Without any indication to the contrary, it

can be reasonably inferred that Plaintiffs' section 1983 claims against these defendants are brought on the same theory. However, the Supreme Court has held that Section 1983 claims cannot be brought on a basis of *respondeat superior* or any other theory of vicarious liability. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 690-92 (1978). Therefore, Plaintiffs' Due Process and Equal Protection claims against Defendants Connelly, Harrington, and Borowick fail as a matter of law.

Similarly, Plaintiffs must allege facts specifically linking SuperCom to the alleged deprivation of their civil rights and have failed to do so. Therefore, the constitutional claims against SuperCom should be dismissed as well.

Plaintiffs cannot claim this issue of individual liability for Section 1983 claims is addressed in their Opposition to the County's Motion Dismiss because these same arguments and issues were not raised as to the County Defendants. Plaintiffs have thus failed to respond to Defendants' arguments, which constitutes as waiver of these issues. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (failure to address issue in opposition deemed waiver).

### C. <u>Plaintiffs Fail to State a Claim against LCA Defendants for Violation of Due Process</u>

Plaintiffs' Due Process Claims against LCA defendants are distinct from its claims against the County Defendants. Whereas Plaintiffs' due process claim against the County stems from allegations that it is unlawful to contract with a private entity, Plaintiffs allege that LCA Defendants violated their due process rights by erecting "unnecessary" barriers and using deceptive and illegal practices. (Compl. at ¶ 357.)

As articulated in LCA Defendants' Motion to Dismiss, Plaintiffs' claim is fundamentally flawed because it imposes legal requirements which do not exist, therefore creating a heightened standard to comply with Due Process. As one example, Plaintiffs allege that LCA Defendants were required to provide them with

advance notice at the outset that the courts can adjudicate fee disputes. However, nowhere in the California Penal Code is it required that administrators have this affirmative duty to advise people. Plaintiffs also claim it was a violation of due process for LCA to report fee disputes and failure to pay fees to the Court, even though this was required by the Penal Code.

Finally, there are no allegations showing that any Plaintiffs were incarcerated due to an inability to pay, and whether or not a Plaintiff is incarcerated is within the sole discretion of the court. Therefore, Plaintiffs fail to establish any viable due process claim against LCA Defendants.

### D. Plaintiffs Fail to State a Claim against LCA Defendants for Equal Protection

Plaintiffs allege that LCA violates Plaintiffs' rights under the Equal Protection Clause not to be imprisoned or punished because of their wealth status by allegedly using threats of jail and extortion. (Compl. at ¶ 360.)

As Defendants pointed out in their Motion to Dismiss, Plaintiffs have failed to allege sufficient facts to show that LCA Defendants punish people because of their wealth status. There are no allegations that LCA only reports low-income individuals, and the inference can be made through Plaintiffs' allegations that LCA would inform a Court, pursuant to Penal Code 1208, if there was any individual who is not paying the monitoring fees, regardless of his/her ability to pay.

Further, LCA has a basis to determine if individuals actually qualify for a reduced rate and inform the courts if people are not paying their fees. It is not to single out or punish low-income individuals; it is to comply with the Penal Code. Because Plaintiffs have failed to respond to Defendants' arguments, they have waived their opposition.

## IV. PLAINTIFF FAILS TO STATE A CLAIM FOR ABUSE OF PROCESS (COUNT IV)

Finally, Plaintiffs sue all LCA Defendants for abuse of process. Yet,

Plaintiffs' Complaint and Opposition fail to show that each LCA Defendant "contemplated an ulterior motive in using the process," as is required. Instead, Plaintiffs' four-line response to Defendants' abuse of process argument simply argues that all LCA Defendants were motivated by one purpose: profit. (Pl.'s Opp. at 23.) This conclusory allegation lacks supporting facts. Specifically, Plaintiffs fail to show how or why the case managers were solely motivated by profit. There are no allegations, for example, that a case manager earned commissions based on how much each client paid, or that a case manager was monetarily incentivized to file violation reports. Likewise, without any specific allegations against Defendants Connelly, Harrington, or Borowick, Plaintiffs fail to show that they were maliciously motivated by profit rather than running a home detention program in accordance with the law. Nor is a profit motive tantamount to the violation of individual rights.

As Defendants noted in their Motion to Dismiss, the allegations instead suggest that the case managers as well as LCA management were following the Penal Code, which indicates that the Court should be informed when an individual cannot pay his fees. This is both proper and a privileged communication. *See Brown v. Kennard*, 94 Cal.App.4th 40 (holding that the litigation privilege barred an abuse of process claim). Therefore, Plaintiffs' abuse of process claims should be dismissed.

///

///

///

///

///

///

///

///

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint against LCA should be dismissed in its entirety. Defendants request that the Court abstain from hearing this matter based on *Younger*. Further, Plaintiffs lack standing to seek injunctive relief, and they fail to state any cognizable claim against Defendants for violations of RICO, the Fourteenth Amendment, or abuse of process under state law.

Dated: November 1, 2018

BURKE, WILLIAMS & SORENSEN, LLP

By: */s/ Kristina Doan Strottman*
Susan E. Coleman
Kristina Doan Strottman

Attorneys for Defendants
LEADERS IN COMMUNITY ALTERNATIVES, INC., SUPERCOM INC., LINDA CONNELLY, DIANE HARRINGTON, KENT BOROWICK, RAELENE RIVAS, JEANETTE ARGUELLO-RAMOS,