IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT JACKSON and KYSER WILSON, individually and on behalf of others similarly situated,

Plaintiffs,

v.

LEADERS IN COMMUNITY ALTERNATIVES, INC.,

Defendant.

No. C 18-04609 WHA

**ORDER RE MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this civil RICO action, defendant moves for summary judgment. To the extent stated below, the motion is **GRANTED**.

## STATEMENT

The County of Alameda contracted with defendant Leaders in Community Alternatives, Inc. to provide an electronic-monitoring program, including GPS and alcohol monitoring, for criminal defendants on pre-trial release or home detention. LCA tracked down participants, provided the necessary equipment, and reported any non-compliance. Plaintiffs were among those referred to LCA's program. LCA required plaintiffs to sign a "Supervision Fee Agreement" that imposed an enrollment fee and a commitment to pay an additional amount per day. Plaintiffs allege that they both paid LCA amounts they could not afford because they feared LCA would "violate" them so that they would return to jail if they failed to pay LCA's fee (Compl. ¶¶ 1–4, 47–64, 80–82, 107–25).

Class certification was denied. At this stage, the only remaining claim is plaintiffs Robert Jackson and Kyser Wilson's RICO claim against LCA.

**ANALYSIS**

Summary judgment is granted when the pleadings and the evidence in the record "show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(a). A dispute is genuine only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). All reasonable inferences must be drawn in the light most favorable to the non-moving party. *Johnson v. Rancho Santiago Cmty*. Coll. Dist., 623 F.3d 1011, 1018 (9th Cir.2010).

To prove a RICO claim, plaintiffs must demonstrate (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004). To prove a pattern of racketeering activity, plaintiffs must show that LCA committed at least two predicate offenses within ten years of each other. *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). Plaintiffs allege that LCA committed predicate offenses of extortion under the Hobbs Act, 18 U.S.C. § 1951, and Section 518 of the California Penal Code.

Extortion is defined in the Hobbs Act and the California Penal Code as obtaining property from another, with his consent, induced by wrongful use of actual or threatened force or fear. 18 U.S.C. § 1951(a). The only possible predicate crimes of extortion here would be LCA's statements to plaintiffs Wilson and Jackson that they would be remanded into custody if they failed to make their payments.

In recounting the alleged threats he received, plaintiff Wilson stated the following:

A: She told me if I didn't make a payment, I was gonna go to jail.

Q: Those were her exact words?

A: Yes.

[. . .]

A: She just told me that, then she went on to say, "This is how it happens," so – but she told me – she put the fear in me that if I didn't pay I was gonna go to jail. So that's how that went.

2

| | | |
|---|---|---|
| 1 | Q: | – and then you said she explained the process, which was – |
| 2 | A: | After that, she's gonna say – she's gonna recommend that I go to court. Because if you don't make a payment, you're going back to court anyway. They want to know why you didn't make a payment. If you don't make a payment, you have to serve the remainder of your time. So it's not a threat, it's a promise. |
| 5 | [. . .] | |
| 6 | Q: | Okay. So her only thing that she said to you was, "If you don't make a payment, you would be going to jail"? |
| 7 | A: | Yes. |
| 8 | Q: | Okay. And she didn't give any more explanation of what she was going to do? |
| 10 | A: | She told me how it goes. |
| 11 | Q: | Okay. So what – |
| 12 | A: | Like, you go to court – *you go to court, and if you don't make the payment, you're gonna go to jail.* You're gonna serve the remainder of your time. |

(Dkt. No. 113, Exh. 7 49:9–12; 49:25; 50:1–17; 51:7–17)

Plaintiff Jackson made the following statements regarding his conversations with his case manager:

| | | |
|---|---|---|
| 17 | A: | That's exactly – I never forget this. She said, "If you don't bring us $800 by the end of the day, then you unsuccessfully complete your ankle monitor. |
| 19 | Q: | But she didn't specifically say, "And you'll have another four months in Santa Rita Jail"? |
| 20 | A: | Well, I already knew that was, 'cause she had already been telling me that for four months. |
| 22 | [. . .] | |
| 23 | Q: | And that threat was? |
| 24 | A: | "Pay me or go to jail." |
| 25 | Q: | Those were their exact words? |
| 26 | A: | Yes. |
| 27 | [. . .] | |
| 28 | Q: | Do you understand that if you didn't pay, LCA would just be writing a report to the court? |

3

|   |   |   |
|---|---|---|
| 1 | A: | Yes. |
| 2 | Q: | Okay. *Did you understand that it would be a judge who's ultimately making the decision of whether you go back to jail or not?* |
| 3 |   |   |
| 4 | A: | *Yes*. |

(Dkt. No. 113, Exh. 8 52:19–25; 64:5–8; 119:9–16)(emphasis added)).

Regardless of whether the LCA employees believed they were making threats or if plaintiffs felt threatened by the employees' statements and feared going to jail, such use of those threats are only considered extortionate under the Hobbs Act and California Penal Code if the employees made them wrongfully. Nonviolent threats made outside the labor context are not inherently wrongful. It is the circumstances of the threat, not the property demanded in the threat that makes the threat wrongful. *United States v. Villalobos*, 748 F.3d 953, 957 (9th Cir. 2014).

For example, in *All Direct Travel Services, Inc. v. Delta Air Lines, Inc.*, our court of appeals found defendant Delta Airlines did not engage in extortion by threatening to terminate its relationship with employees that refused to pay debit memos because Delta had the legal right to terminate relationships with employees for any reason. 120 F. App'x 673, 675 (9th Cir. 2005). Similarly, in *Rothman v. Vedder Park Management,* our court of appeals found that property management employees did not engage in extortion by threatening residents with "If you don't sign the lease, you don't know what you are in for because without a lease they can charge you anything they want," and by alluding to rent increases. 912 F.2d 315, 318 (9th Cir. 1990). The management company could raise the rent of residents, and warning them of such a possibility was thus not wrongful.

Plaintiffs Wilson and Jackson both stated that they felt threatened when their case managers told them they would go back to jail if they did not make the payments. It is possible this conduct could have been extortionate if the employees had, for example, only stated without providing further context or making further statements that LCA itself would ensure plaintiffs would go to jail if they failed to pay. Such conduct could be wrongful because LCA did not have the ability to directly send plaintiffs to jail. It is clear, however, from examining the

4

context of the employees' statements, even if not explicitly stated in every instance, that plaintiffs knew failure to pay at all would result in LCA reporting such failure to the court, which could then likely lead to a court remand of plaintiffs into custody. There is no dispute that LCA may write such reports.

At oral argument, plaintiffs' counsel likened this situation to a child support agent telling a parent, "Pay me a thousand dollars or I'm going to make sure your kids are taken away from you." What would make this threat extortionate would be the fact that the agent had no right to the parent's money. That is, not, however, the case here. Plaintiffs agreed to pay fees as part of their respective ankle monitoring programs. It is true that plaintiffs' inability to pay does not allow LCA to deny participation in the electronic monitoring program altogether. LCA did not threaten to end plaintiffs' participation in the program upon nonpayment though. Rather, based on LCA's statements, plaintiffs were made aware that the outcome of failing to pay at all would be a violation report with the likely possibility of being remanded to jail. Unlike the child support agent in the example above, LCA's conduct was not wrongful because LCA had a right to at least some of plaintiffs' payments.

Plaintiff Wilson signed an agreement recognizing his obligation to pay and LCA's right to submit an incident report if he failed to pay (Essex Decl. Ex. C). He questions the authenticity of this document, stating that defendant has not provided an authenticating declaration. Nonetheless, declarant Jeffrey Essex's declaration is sufficient to authenticate the document. Essex is the Director of Program Services at LCA. He swears that LCA maintains "a (1) database of participants, and (2) a hard file for each participant." He further swears his familiarity with the database and hard files, both categories of which are business records. In preparing his declaration, Essex viewed plaintiff Wilson's file and attached the agreement. The agreement is also signed by plaintiff Wilson and the signature matches the one in his declaration.

Similarly, although defendant has failed to find a similar agreement for plaintiff Jackson, he stated the following about his first meeting with his case manager:

> Q: So did Belinda tell you – explain to you that this was a program where you would have to pay?
>
> A: Yes.

5

| | |
|---|---|
|1| Q: And what did you say in response to her about that?|
|2| A: Uh, I didn't say anything. I just – I agreed.|

(Dkt. No. 112-3, Ex. P at 180). LCA includes the supervision fee agreement in its electronic monitoring enrollment forms, which is submitted before the participant can begin electronic monitoring. Plaintiff Jackson has also not denied that he signed a fee agreement.

The main issue for summary judgment in this case is whether defendant's conduct was wrongful. Here, there is no genuine dispute as to any material fact that plaintiffs both agreed to pay fees as part of their respective electronic monitoring programs and that defendant was thus entitled to payments from plaintiffs, regardless of the amount. In stating that nonpayment could result in being remanded to jail, defendant did not commit the predicate act of extortion necessary for a violation of RICO. This order thus need not and will not address the remaining elements for a RICO violation. Summary judgment is **GRANTED** for defendant as to plaintiffs Jackson and Wilson's only remaining claim of a RICO violation.

## CONCLUSION

To the foregoing extent, defendant's motion for summary judgment is **GRANTED**. Judgment will be entered separately for defendant and against plaintiffs.

**IT IS SO ORDERED.**

Dated: December 19, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE